Slade R. Metcalf (SM 8360)
Jason P. Conti (JC 0581)
Rachel F. Strom (RS 9666)
Hogan & Hartson LLP
875 Third Avenue
New York, NY 10022
Telephone: (212) 918-3000
Facsimile: (212) 918-3100

*Attorneys for Defendants Twentieth Century Fox*
*Film Corporation, One America Productions, Inc.,*
*Todd Schulman, and Sacha Baron Cohen*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

--------------------------------------------------------------------X

MICHAEL PSENICSKA,                                        :
                                                          :
                              Plaintiff,                  :    Case No.: 07 CIV 10972 (LAP)
                                                          :
         -against-                                        :
                                                          :
TWENTIETH CENTURY FOX FILM CORPORATION,                   :
ONE AMERICA PRODUCTIONS, INC.,                            :
TODD LEWIS, and                                           :
SACHA BARON COHEN,                                        :
                                                          :
                              Defendants.                 :
                                                          :
--------------------------------------------------------------------X

## DEFENDANTS' MEMORANDUM OF LAW IN
## SUPPORT OF THEIR MOTION TO DISMISS THE COMPLAINT

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT ........................................................................................... 1

FACTUAL BACKGROUND ................................................................................................ 2

    A.  The Parties ............................................................................................................ 2

    B.  The Complaint ....................................................................................................... 2

    C.  The Release ........................................................................................................... 4

    D.  The Film ................................................................................................................ 5

ARGUMENT ........................................................................................................................ 6

I.   MOTION TO DISMISS STANDARD ............................................................................ 6

II.  PLAINTIFF'S CLAIMS FOR FRAUDULENT INDUCEMENT MUST FAIL
     BECAUSE PLAINTIFF CANNOT DEMONSTRATE REASONABLE
     RELIANCE ON DEFENDANTS' ALLEGED MISREPRESENTATIONS ................... 6

    A.  Plaintiff Must Satisfy An Exacting Burden To Void A Release
        Due To Fraudulent Inducement .......................................................................... 7

    B.  Plaintiff's Fraudulent Inducement Claim Must Fail Because Plaintiff Signed The
        Release Without Any Valid Reason For His Alleged Failure To Read Its Contents .......... 8

    C.  Plaintiff's Fraudulent Inducement Claim Also Must Fail Because
        The Release States That Plaintiff Was Not Relying On Any Statements
        About The Nature Of The Film .......................................................................... 13

III. PLAINTIFF'S CLAIM FOR COMMERCIAL MISAPPROPRIATION MUST
     BE DISMISSED BECAUSE PLAINTIFF SIGNED THE RELEASE .................... 14

IV. PLAINTIFF'S CLAIM FOR QUANTUM MERUIT IS SUBSUMED BY HIS
     MISAPPROPRIATION CLAIM, AND THEREFORE SHOULD BE DISMISSED ........... 16

V.  PLAINTIFF'S CLAIM FOR PRIMA FACIE TORT MUST FAIL
     BECAUSE HE CANNOT ESTABLISH THE NECESSARY
     ELEMENTS TO MAINTAIN SUCH A CLAIM ................................................. 17

CONCLUSION .................................................................................................................. 20

# TABLE OF AUTHORITIES

**Page**

**Federal Cases:**

*2 Broadway L.L.C. v. Credit Suisse First Boston Mortgage Capital, LLC*,
    No. 00 Civ. 5773 (GEL), 2001 WL 410074 (S.D.N.Y. Apr. 23, 2001) ...................................4

*Aaron Ferer & Sons Ltd. v. Chase Manhattan Bank, Nat'l Ass'n*,
    731 F.2d 112 (2d Cir. 1984).........................................................................................6

*Arnold v. ABC, Inc.*,
    No. 06 Civ. 1747(GBD), 2007 WL 210330 (S.D.N.Y. Jan. 29, 2007).....................................4

*Broder v. Cablevision Sys. Corp.*,
    418 F.3d 187 (2d Cir. 2005).....................................................................................4, 10

*Cerasani v. Sony Corp.*,
    991 F. Supp. 343 (S.D.N.Y. 1998)................................................................................6

*Chambers v. Time Warner, Inc.*,
    282 F.3d 147 (2d Cir. 2002)........................................................................................4

*Church of Scientology of California v. Siegelman*,
    94 F.R.D. 735 (S.D.N.Y. 1982) ...................................................................................18

*Colina v. One East River Place Realty Co., LLC*,
    No. 99 Civ. 5173 (DC), 2000 WL 1171126 (S.D.N.Y. Aug. 17, 2000) .................................18

*Computerized Radiological Servs. v. Syntex Corp.*,
    786 F.2d 72 (2d Cir. 1986).........................................................................................7

*Eavzan v. Polo Ralph Lauren Corp.*,
    40 F. Supp. 2d 147 (S.D.N.Y. 1998).............................................................................18

*Fabry v. Meridian Vat Reclaim, Inc.*,
    Nos. 99 Civ. 5149 (NRB), 99 Civ. 5150 (NRB),
    2000 WL 1515182 (S.D.N.Y. Oct. 11, 2000) ................................................................18

*Fonseca v. Columbia Gas Sys., Inc.*,
    37 F. Supp. 2d 214 (W.D.N.Y. 1998) ..........................................................................13

*Hoffenberg v. Hoffman & Pollok*,
    248 F. Supp. 2d 303 (S.D.N.Y. 2003)............................................................................7

\\\NY - 027721/000007 - 1070406 v3

*Jackson v. Broadcast Music, Inc.*,
No. 04 Civ. 5948 (TPG), 2006 WL 250524 (S.D.N.Y. Feb. 1, 2006),
*aff'd*, No. 06 Civ. 2283, 2007 WL 2914516 (2d Cir. Oct. 5, 2007)............................8

*Myskina v. Conde Nast Publ'ns, Inc.*,
386 F. Supp. 2d 409 (S.D.N.Y. 2005)...............................................................15, 16

*Scala v. Sequor Group, Inc.*,
No. 94 Civ. 0449 (LAP), 1995 WL 225625 (S.D.N.Y. Apr. 14, 1995).............................8, 13

*Skylon Corp. v. Guilford Mills, Inc.*,
864 F. Supp. 353 (S.D.N.Y. 1994)................................................................7

*Streit v. Twentieth Century Fox Film Corp.*,
CV 07-J-1918-S (N.D. Ala. Jan. 30, 2008)........................................................10

*Twin Labs., Inc. v. Weider Health & Fitness*,
900 F.2d 566 (2d Cir. 1990)................................................................17, 18, 19

*Washington Capital Ventures, LLC v. Dynamicsoft, Inc.*,
373 F. Supp. 2d 360 (S.D.N.Y. 2005)..............................................................8

*Yurman Design Inc. v. Chaindom Enters., Inc.*,
No. 99 Civ. 9307 (JFK), 2000 WL 897141 (S.D.N.Y. July 5, 2000) .......................................6

*Zoll v. Ruder Finn, Inc.*,
No. 02 Civ. 3652 (CSH), 01 Civ. 1339 (CSH),
2004 WL 42260 (S.D.N.Y. Jan. 7, 2004) ............................................................16

## State Cases:

*Citibank, N.A. v. Plapinger*,
66 N.Y.2d 90, 495 N.Y.S.2d 309 (1985) ............................................................13

*Doe v. One America Prods., Inc.*,
SC091723 (Sup. Ct. Los Angeles Co. Feb 15, 2007) ..................................................19

*Ex parte Perry*,
744 So.2d 859 (Ala. 1999).........................................................................10

*Finger v. Omni Publ'ns Int'l*,
77 N.Y.2d 138, 564 N.Y.S.2d 1014 (1990) ..........................................................14

\\\NY - 027721/000007 - 1070406 v3

*Freihofer v. Hearst Corp.*,
  65 N.Y.2d 135, 490 N.Y.S.2d 735 (1985) ...................................................17, 18, 19

*Hampton v. Guare*,
  195 A.D.2d 366, 600 N.Y.S.2d 57 (1st Dep't 1993) ...........................................16

*Howell v. New York Post Co.*,
  81 N.Y.2d 115, 596 N.Y.S.2d 350 (1993) .........................................................14

*Messenger v. Gruner + Jahr Printing and Publ'g*,
  94 N.Y.2d 436, 706 N.Y.S.2d 52 (2000) ......................................................14, 16

*Morby v. Di Siena Assocs. LPA*,
  291 A.D.2d 604, 737 N.Y.S.2d 678 (3d Dep't 2002) .............................................9

*Nussenzweig v. DiCorcia*,
  11 Misc.3d 1051(A), 814 N.Y.S.2d 891,
  2006 WL 304832 (Sup. Ct. N.Y. Co. Feb. 8, 2006),
  *aff'd*, 38 A.D.3d 339, 832 N.Y.S.2d 510 (1st Dep't 2007).....................................14

*Ruffino v. Neiman*,
  17 A.D.3d 998, 794 N.Y.S.2d 228 (4th Dep't 2005).............................................15

*Shklovskiy v. Khan*,
  273 A.D.2d 371, 709 N.Y.S.2d 208 (2d Dep't 2000)...........................................7, 9

*Sofio v. Hughes*,
  162 A.D.2d 518, 556 N.Y.S.2d 717 (2d Dep't),
  *appeal denied*, 76 N.Y.2d 712, 563 N.Y.S.2d 768 (1990)......................................9

*Touloumis v. Chalem*,
  156 A.D.2d 230, 548 N.Y.S.2d 493 (1st Dep't 1989) .....................................7, 8, 9

*Wehringer v. Helmsley-Spear, Inc.*,
  91 A.D.2d 585, 457 N.Y.S.2d 78 (1st Dep't 1982) ........................................19, 20

*Weil v. Johnson*,
  No. 119431/02, 2002 WL 31972157 (Sup. Ct. N.Y. Co. Sept. 27, 2002) ..................10, 11, 12

## **Federal Statutes/Rules**

Fed. R. Civ. P. 9(b) ..................................................................................7, 8

Fed. R. Civ. P. 12(b)(6)............................................................................1, 6

Fed. R. Civ. P. 56......................................................................................1

iv

<u>**State Statutes**</u>

N.Y. Civ. Rights Law § 51 ...................................................................................................... *passim*

Defendants Twentieth Century Fox Film Corporation ("Fox"), One America Productions, Inc. ("One America"), Todd Schulman ("Schulman") (incorrectly sued herein as "Todd Lewis"), and Sacha Baron Cohen ("Cohen") (collectively, "Defendants") by their undersigned attorneys, respectfully submit this memorandum of law in support of their motion to dismiss the complaint of plaintiff Michael Psenicska ("Plaintiff") pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure ("Fed. R. Civ. P.").[1]

## Preliminary Statement

Plaintiff is an educated and accomplished man. For 29 years, he has taught high school mathematics in Baltimore, Maryland. Apparently as a side business, he has owned and operated the Perry Hall Driving School in Perry Hall, Maryland for the past 32 years. In that capacity, he has taken on the serious task of training "hundreds of students" (both foreign and domestic) to become safe and careful drivers. (Complaint ¶ 12.) In June 2005, he voluntarily agreed to be filmed for a film that eventually was exhibited under the title *Borat – Cultural Learnings of America for Make Benefit Glorious Nation of Kazakhstan* (the "Film"). He was paid $500 by the production company for his appearance and signed a release entitled "Standard Consent Agreement". He alleges that he gave Borat (the protagonist in the Film) a driving lesson, and while in the car, Borat engaged in obnoxious, rude, and offensive conduct while he was purportedly learning to drive. Plaintiff also alleges (which is borne out in the Film itself) that he repeatedly objected to Borat's sexist and homophobic statements. Indeed, unlike some other people in the Film, Plaintiff comes across as a sincere, tolerant man who voices his objection to

---

[1] The facts necessary for the determination of this motion are set forth in the accompanying declarations of Joan Hansen ("Hansen Decl."), sworn to on the 14th day of February, 2008, and of Slade R. Metcalf, ("Metcalf Decl."), sworn to on the 15th day of February, 2008, and the exhibits annexed thereto. The facts set forth in these declarations will not transform this Rule 12(b)(6) motion to dismiss into a Rule 56 motion for summary judgment. (*See* footnotes 3-4, *infra*.)

socially offensive statements.

Despite his favorable treatment in the Film and the undisputed fact that he signed the Standard Consent Agreement giving up all his rights to sue here, he apparently wants to be paid more than the $500 he received for his appearance in the Film.  He now claims that the Agreement is unenforceable because he was duped into signing it.  He claims that he didn't have time to read the Agreement before signing it and that he didn't bring his reading glasses to the driving session, allegations that we must, for the purposes of this motion, accept as true.  He also claims that the Agreement was illegible, but this claim is belied by the clarity of the copy of the actual Agreement, which is annexed to the Hansen Decl. as Exhibit A.  In point of fact, he signed an agreement releasing any and all claims he might have had against Defendants and agreed not to sue.  It is clear the Agreement should be enforced and this complaint dismissed.

## Factual Background

### A.    The Parties

Plaintiff Michael Psenicska is, according to his complaint (the "Complaint"), a resident of the State of Maryland.  Metcalf Decl., Ex. A, Complaint ¶ 2.

Defendant Fox is a corporation incorporated under the laws of the State of Delaware, with its principal place of business in California.  Hansen Decl. ¶ 5.  Defendant One America is a California corporation, with its principal place of business in California.  *Id*. ¶ 7.  Defendant Cohen is a citizen of the United Kingdom and a resident of the State of California.  *Id*. ¶ 8.  Defendant Schulman is a citizen of the State of California.  *Id*. ¶ 9.

### B.    The Complaint

On December 3, 2007, Plaintiff filed a Summons and the Complaint in this Court.  Metcalf Decl.¶ 2.  (A true and correct copy of the Complaint is annexed as Exhibit A to the

Metcalf Decl.)  The Complaint stems from Plaintiff's alleged inducement to appear in the Film and his subsequent appearance in the Film.  *See generally* Complaint.  Plaintiff, a high school math teacher and owner of a driving school, notes in the Complaint that he was asked to appear in a "documentary" regarding "'the integration of foreign people into the American way of life.'"  *Id.* ¶¶ 12-13.  After meeting with individuals affiliated with the Film, and agreeing to be filmed teaching a foreign national how to drive, Plaintiff then went to the agreed-upon location in Columbia, Maryland on Monday, June 13, 2005.[2]  *See id.* ¶¶ 13-16.

Plaintiff asserts that on that date, he was paid $500 in cash and asked to sign a standard release.  *Id.* ¶ 17.  Alleging that he was rushed and did not have his reading glasses, Plaintiff acknowledges that he signed the release "without reading or even more than looking where to sign and put his information."  *Id.*  After receiving his payment and signing the release, Plaintiff then met the star of the Film—Borat Sagdiyev ("Borat"), played by Cohen.  *See* Complaint ¶ 21.  After engaging in certain antics, Borat proceeded to take the wheel of a specially-equipped driver-education car with Plaintiff serving as the driving instructor.  *Id.* ¶¶ 20, 22.  During the filming, Plaintiff alleges that Borat made certain offensive remarks and drove in a dangerous and erratic fashion.  *See id.*  Plaintiff also claims that he informed Borat he must drive in the safest possible manner, and repeatedly "admonished" Borat for his offensive remarks.  *See id.*

As a result of Plaintiff's involvement in the Film and advertising and promotion for the Film, Plaintiff asserts five claims in his Complaint:  "fraudulent inducement – compensatory and punitive damages;" "fraudulent inducement – Rescission of the Release;" a violation of "New York Civil Rights Law;" quantum meruit; and prima facie tort.  *See generally id.*

---

[2] Plaintiff alternately states in the Complaint that the date was June 12, 2005 and June 13, 2005. Complaint ¶¶ 15-16.  However, Plaintiff is clear that it was a Monday.  *See id.*  As such, it is clear that the correct date is Monday, June 13, 2005.

C.    **The Release**

On June 13, 2005, Plaintiff and One America entered into a six-paragraph release (the "Release"), whereby, in exchange for five hundred dollars ($500), Plaintiff agreed to appear in the Film.  (A true and correct copy of the Release and its cover page is annexed as Exhibit A to the Hansen Decl.)[3]  In the Release, Plaintiff acknowledged that "in entering into [the Release, Plaintiff] is not relying upon any promises or statements made by anyone about the nature of the Film or the identity of any other Participants or persons involved in the Film."   Release ¶ 5. Further, Plaintiff agreed:

> [N]ot to bring any time in the future, any claims against [One America], or against any of its assignees or licensees or anyone associated with the Film, that include assertions of (a) infringement of rights of publicity or misappropriation (such as any allegedly improper or unauthorized use of the [Plaintiff's] name or likeness of image, ... (d) intrusion (such as any allegedly offensive behavior or questioning or any invasion of privacy), (e) false light (such as any allegedly false or misleading portrayal of [Plaintiff], ... (h) breach of any alleged contract (whether the alleged contract is verbal or in writing), (i) allegedly deceptive business or trade practices, ... (m) prima facie tort (such as alleged intentional harm to [Plaintiff], (n) fraud (such as any alleged deception or surprise about the Film or this consent

---

[3] The inclusion of the Release does not convert this motion to dismiss to one for summary judgment because Plaintiff has relied on the terms and effect of the Release in drafting the Complaint and, therefore the Release is integral to the Complaint.  *See* Complaint ¶¶ 17-18 (Schulman "gave plaintiff ... a few pieces of paper and a pen.  Lewis [sic] said that the papers were standard and needed by the producers for the documentary....   One document given to plaintiff by Lewis [sic] was entitled 'Standard Consent Agreement'...."); *see also Broder v. Cablevision Sys. Corp.,* 418 F.3d 187, 196 (2d Cir. 2005) (internal quotations omitted) (on a motion to dismiss, a court "is not limited solely to the allegations in the complaint.... Where a plaintiff has relied on the terms and effect of a document in drafting the complaint and that document is thus integral to the complaint, [a court] may consider its contents even it if is not formally incorporated by reference"); *Arnold v. ABC, Inc.*, No. 06 Civ. 1747(GBD), 2007 WL 210330, at *1, n.2 (S.D.N.Y. Jan. 29, 2007) (noting that "The court may, however, consider a document [in conjunction with a motion to dismiss] if the plaintiff 'relies heavily upon its terms and effect,' rendering 'the document 'integral' to the complaint'" and reviewing advertisement and website materials submitted by the defendant, which plaintiff relied on in drafting the complaint) (*citing Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002)); *2 Broadway L.L.C. v. Credit Suisse First Boston Mortgage Capital, LLC*, No. 00 Civ. 5773 (GEL), 2001 WL 410074, at *5 (S.D.N.Y. Apr. 23, 2001) (considering releases that were not attached to the complaint on a motion to dismiss because "the Complaint explicitly references them.").

agreement) ...

*Id.* ¶ 4.  In addition, the Release states that Plaintiff "agrees to allow the Producer, and any of its assignees or licensees, to use the [Plaintiff's] contribution, photograph, film footage, and biographical material in connection not only with the Film, but also in any advertising, marketing or publicity for the Film…."  *Id.* ¶ 2.  After signing the Release, Plaintiff participated in the filming of his appearance for the Film.  *See* Complaint ¶¶ 19-20.

**D.**    **The Film**

The Film, which was distributed by Fox and produced by One America, was first released in theaters in the United States on or about November 3, 2006, and was released on DVD in the United States on March 6, 2007.  Hansen Decl. ¶¶ 6-7.  (A true and correct copy of the Film on DVD is annexed as Exhibit B to the Hansen Decl.)[4]  The documentary-style Film tells the story of Borat, a fictional Kazakh TV personality dispatched to the United States by the Kazakhstan Ministry of Information to report on the American people.  Comedian and actor Cohen created and plays Borat.  *Id.,* Ex. B

In the Film, Borat travels across America with his friend and producer, Azamat Bagatov.  *Id.*  During this transcontinental journey, Borat encounters a homophobic rodeo owner, kindly Jewish inn keepers, drunken fraternity boys and various other individuals.  *Id.*  Cohen employs antics ranging from fish-out-of-water buffoonery, to eccentric and prejudicial commentary, to evoke reactions from the Americans Borat encounters.  *See id.*  In keeping with this theme, Plaintiff – a driving instructor – is depicted in one scene attempting to teach Borat how to drive, while Borat antagonizes the other drivers and flouts the rules of the road.  *See* Hansen Decl., Ex. B (at approximately 19 minutes and 30 seconds, and 77 minutes and 15 seconds into the Film).

---

[4] Like the Release, the submission of the Film on DVD does not convert this motion to dismiss to one for summary judgment because the Film is integral to Plaintiff's claims.  *See* footnote 3.

\\\NY - 027721/000007 - 1070406 v3

**ARGUMENT**

**I.**

**MOTION TO DISMISS STANDARD**

When evaluating a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim, a court "must accept the factual allegations set forth in the complaint as true, and draw all reasonable inferences in favor of the plaintiff." *Cerasani v. Sony Corp.*, 991 F. Supp. 343, 350, 357 (S.D.N.Y. 1998) (dismissing Section 51 claim on motion to dismiss). To survive a motion to dismiss, "the complaint must contain allegations concerning each of the material elements necessary to sustain recovery under a viable legal theory." *Yurman Design Inc. v. Chaindom Enters., Inc.*, No. 99 Civ. 9307 (JFK), 2000 WL 897141, at *4 (S.D.N.Y. July 5, 2000).

**II.**

**PLAINTIFF'S CLAIMS FOR FRAUDULENT INDUCEMENT MUST FAIL BECAUSE PLAINTIFF CANNOT DEMONSTRATE REASONABLE RELIANCE ON DEFENDANTS' ALLEGED MISREPRESENTATIONS**

Plaintiff's claim for fraudulent inducement must fail because Plaintiff signed the Release without any valid excuse for his alleged failure to read it – and therefore cannot demonstrate a reasonable reliance on any alleged misrepresentations. Further, the Release clearly states that Plaintiff was not relying on any representations regarding the nature of the Film.[5]  Accordingly, Plaintiff's fraudulent inducement claim must fail.

---

[5] Plaintiff asserts two claims for fraudulent inducement: one for damages (claim one) and one for rescission (claim two). These claims, however, are not different causes of action; they simply seek different remedies for the same cause of action. *Aaron Ferer & Sons Ltd. v. Chase Manhattan Bank, Nat'l Ass'n,* 731 F.2d 112, 123 (2d Cir. 1984) (stating that fraud "serves as a basis for an action for money damages or for rescission of a release") (internal quotations and citations omitted). Indeed, in support of his "claim" for rescission, Plaintiff merely alleges that "All prior averments are repeated" and that "By virtue of defendants' fraudulent conduct, plaintiff is entitled to rescission...." Complaint ¶¶ 39, 40. Accordingly, Defendants address Plaintiff's two fraudulent inducement "claims" as one cause of action.

**A.    Plaintiff Must Satisfy An Exacting Burden To
        Void A Release Due To Fraudulent Inducement**

Under New York law, which governs the Release (Release ¶ 6), releases are considered to be contracts, and therefore are interpreted according to principles of contract law.  *Shklovskiy v. Khan*, 273 A.D.2d 371, 372, 709 N.Y.S.2d 208, 209 (2d Dep't 2000).   New York courts consider releases to be a serious and necessary part of our judicial system: "A release may not be treated lightly.   It is a jural act of high significance without which the settlement of disputes would be rendered all but impossible."   *Touloumis v. Chalem*, 156 A.D.2d 230, 231, 548 N.Y.S.2d 493, 494 (1st Dep't 1989) (internal quotation omitted).   Indeed, "It is well established in New York that a valid release which is clear and unambiguous on its face and which is knowingly and voluntarily entered into will be enforced as a private agreement between parties.   Thus, a release will be binding on the parties absent a showing of fraud, duress, undue influence, or some other valid legal defense.   Moreover, in the absence of a fiduciary relationship, a party seeking to avoid an otherwise valid release has the burden of proving vitiating circumstances."   *Skylon Corp. v. Guilford Mills, Inc.*, 864 F. Supp. 353, 358 (S.D.N.Y. 1994) (Preska, J.) (internal quotations and citations omitted).

In order to avoid the conclusive effect of a release due to allegations of fraudulent inducement, a party must prove: "(1) that the defendant made a representation, (2) as to a material fact, (3) which was false, (4) and known to be false by the defendant, (5) that the representation was made for the purpose of inducing the other party to rely upon it, (6) that the other party rightfully did so rely, (7) in ignorance of its falsity (8) to his injury."   *Hoffenberg v. Hoffman & Pollok*, 248 F. Supp. 2d 303, 310 (S.D.N.Y. 2003).   Fraud must be proved by clear and convincing evidence.   *Computerized Radiological Servs. v. Syntex Corp.*, 786 F.2d 72, 76 (2d Cir. 1986).   Further, under Fed. R. Civ. P. 9(b), a party pleading fraud must allege "the

7

circumstances constituting fraud or mistake ... with particularity." Fed. R. Civ. P. 9(b). As such, to meet this standard, a plaintiff must "adequately specify the statements he claims were false or misleading, give particulars as to the respect in which he contends the statements were fraudulent, state when and where the statements were made, and identify those responsible for the statements." *Scala v. Sequor Group, Inc.,* No. 94 Civ. 0449 (LAP), 1995 WL 225625, at *3 (S.D.N.Y. Apr. 14, 1995) (Preska, J.).

**B.      Plaintiff's Fraudulent Inducement Claim Must Fail Because Plaintiff Signed The Release Without Any Valid Reason For His Alleged Failure To Read Its Contents**

This Court should dismiss Plaintiff's fraudulent inducement claim because Plaintiff cannot establish reasonable reliance on any alleged misrepresentations. Under New York law, "Reasonable reliance is an essential element of a claim of fraud." *Jackson v. Broadcast Music, Inc.,* No. 04 Civ. 5948 (TPG), 2006 WL 250524, at *9 (S.D.N.Y. Feb. 1, 2006), *aff'd,* No. 06 Civ. 2283, 2007 WL 2914516 (2d Cir. Oct. 5, 2007). And, "[a] plaintiff's ability to establish reasonable reliance is irreparably impaired when [he] simply fails to read a binding document prior to executing the document." *Washington Capital Ventures, LLC v. Dynamicsoft, Inc.*, 373 F. Supp. 2d 360, 365 (S.D.N.Y. 2005) (even assuming the defendants made fraudulent misrepresentations, dismissing fraud claim because plaintiffs failed to read the contract at issue); *see also Jackson,* 2006 WL 250524, at *9 (dismissing fraudulent inducement claim because the one-page agreement at issue was clear that Plaintiff was releasing his rights to his music, so "Plaintiff could not reasonably have relied on any alleged misrepresentation to the contrary."). New York courts reason that, because a party must be actively engaged in contracting and cannot merely blindly rely on another's representations, "[a] party is under an obligation to read a document before he or she signs it, and one cannot generally avoid the effect of a release upon the ground that he or she did not read it or know its contents." *Touloumis*, 156 A.D.2d at 232,

548 N.Y.S.2d at 495.

Indeed, New York courts hold that even "[p]ersons who are blind or illiterate are not automatically excused from complying with the terms of the contracts which they sign simply because their disability might have prevented them from reading the contracts. The cases consistently hold that a person with such a disability must make a reasonable effort to have the document read to him." *Sofio v. Hughes,* 162 A.D.2d 518, 520, 556 N.Y.S.2d 717, 719 (2d Dep't), *appeal denied,* 76 N.Y.2d 712, 563 N.Y.S.2d 768 (1990). *See also Shklovskiy,* 273 A.D.2d at 372, 709 N.Y.S.2d at 209 (rejecting plaintiff's argument that release was obtained by fraud because defendant purportedly told him the release was a receipt, noting "a party will not be excused from his failure to read and understand the contents of a release" even if that person does not speak English).

For example, in *Morby v. Di Siena Assocs. LPA,* 291 A.D.2d 604, 737 N.Y.S.2d 678 (3d Dep't 2002), the plaintiff sought damages stemming from an injury he sustained while doing work for the defendants. The plaintiff, however, had signed a personal injury release – without reading it – because allegedly the defendants fraudulently claimed the release was merely a "labor and materials release." *Id.* 291 A.D.2d at 604-605, 737 N.Y.S.2d at 679-680. The court held that the plaintiff's complaint must be dismissed because:

> [E]ven accepting as true plaintiff's allegations concerning the misrepresentations ... a reading of the simple, straightforward document would have readily advised him that he was indeed discharging all claims against defendants for 'personal injury' ... Having failed to read the release before signing it, plaintiff simply cannot establish the essential element of justifiable reliance.... Plaintiff cannot now avoid his obligations under a release he did not read merely by asserting that he 'thought' it was something else.

*Id.* 291 A.D.2d at 605, 737 N.Y.S.2d at 680.

Similarly, here, Plaintiff *admits* that he signed the Release without even attempting to

read its contents, noting in the Complaint that he did nothing more than "look[] where to sign." Complaint ¶¶ 17, 18, 20. Plaintiff alleges that he did not read the Release because he "did not have his reading glasses with him," it was "virtually illegible,"[6] and he did not have sufficient time to read it. Complaint ¶¶ 17-18.[7] The law is clear, however, that, even accepting these allegations as true, Plaintiff still had a duty to make reasonable efforts to read the Release or have it read to him *before* signing. *See Weil v. Johnson*, No. 119431/02, 2002 WL 31972157, at *2 (Sup. Ct. N.Y. Co. Sept. 27, 2002) (even if a release was "sheepishly, surreptitiously and in the vein of irrelevancy flashed" to the plaintiff, he was still bound by the release because he signed it). Significantly, Plaintiff has not (and, indeed, cannot) allege that he asked *anyone* to read the Release to him or to give him time to get his reading glasses so he could read it himself. Plaintiff cannot now avoid the consequences of the unambiguous six-paragraph, *one-page* Release due to his own failure to make reasonable efforts to read its contents.

Further, had Plaintiff taken the few minutes needed to read the six-paragraph Release, he would have certainly understood that by signing the Release he was agreeing to waive his right to bring all of the claims he has now asserted against Defendants. One case is particularly

---

[6] Contrary to Plaintiff's allegations, the Release is clearly legible. *See* Hansen Decl., Ex. A. And, as the Second Circuit noted in *Broder,* even on a motion to dismiss, this Court does not have to accept the Complaint's description of the Release. *Broder,* 418 F.3d at 196 (reviewing a document that was "integral to the complaint," rather than "accept[ing the complaint's] description of it").

[7] In a recent case involving a participant in the Film who was also seeking to avoid the consequences of a release due to allegations of fraud, the United States District Court for the Northern District of Alabama held that plaintiff's allegations that "they did not thoroughly read the Standard Consent Agreement because the defendants did not allow them enough time..." did not render the release "unenforceable." *See Streit v. Twentieth Century Fox Film Corp.,* CV 07-J-1918-S, at pp. 3-4 (N.D. Ala. Jan. 30, 2008) (A true and correct copy of the decision is annexed hereto as Exhibit A). The court noted that "a party is responsible for reading a contract before signing it, regardless of whether the party felt 'hurried.'" *Id.* at p. 4 (citing *Ex parte Perry,* 744 So. 2d 859, 863 (Ala. 1999)) ("if the plaintiff felt hurried 'she could have slowed the process down or could have refused to sign the contract.'").

instructive under the circumstances present here.  *Weil v. Johnson* involved a film entitled "Born

Rich," a documentary about the lives of children who grew up very wealthy.  The plaintiff, Luke

Weil—heir to the Autotote gaming empire—was one of the eleven individuals profiled in the

documentary, which was made by Jamie Johnson, an heir to the Johnson & Johnson fortune.

2002 WL 31972157, at *1.  Before participating in the interview for the film, Weil signed three

separate release forms.  The releases, which appeared under the letterhead of "Black River Films,

Inc." along with a Beverly Hills address, contained a general release for the filmmakers to use

any footage of the interview in any manner they wished in connection with the film.  The release

also stated, "I am granting these rights in exchange for good and valuable consideration, receipt

of which is hereby acknowledged.  I hereby waive any right to injunctive or other equitable relief

in connection with the development production, distribution or other exploitation of the Picture."

*Id.* at *1-2.

     After Johnson completed the documentary, and it was set to be released, Weil sued

seeking a declaration that the releases were nullities because they were fraudulently obtained and

for an injunction preventing the release of the film.  Weil alleged that when Johnson solicited his

participation, Johnson "assured Weil that 'the singular purpose and expected utilization of the

interview was solely for non-commercial purposes and merely in furtherance of a *school

project*.'"  *Id.* at *2 (emphasis added).  The complaint also claimed that Johnson "sheepishly,

surreptitiously and in the vein of irrelevancy flashed a document in front of the plaintiff" noting

that the release was necessary before filming, and indicated that "said executed document was an

irrelevant formality that needed to be disposed of."  *Id.*  Despite Weil's arguments, the court

rejected his claim of fraud noting, "Weil's allegations are contradicted by the very face of the

Release, *which clearly alerted him to the fact that the enterprise was not a 'student project,'* but

\\\NY - 027721/000007 - 1070406 v3

rather was a commercial production being undertaken by a professional studio based in Beverly Hills, California." *Id.* (emphasis added). Furthermore, the court noted that it is well settled that "a plaintiff may not avoid his obligations under a clearly worded release on the ground that the defendant falsely misrepresented the true significance of the document to him in order to secure his signature." *Weil,* 2002 WL 31972157, at *2. As such, the court concluded that the releases "signed by plaintiff appear valid and binding on their face." *Id.* at *3.

Similarly, here, Plaintiff alleges that, by signing the Release, he was relying on Schulman's representations that the papers "were standard and needed by the producers for the documentary" and that "the true nature" of the Film "was never disclosed to plaintiff. [Schulman] deliberately deceived plaintiff about the purpose of the purported documentary and plaintiff's appearance in it." Complaint ¶¶ 13, 17, 29. But, these claims are contradicted by the clear terms of the Release itself. The first paragraph states that the document is an agreement for the participant to be paid money in exchange for the "opportunity for the Participant to appear in a *motion picture....*" Release at p. 2 (emphasis added). Further, the Release also fleshes out the nature of the project by stating, "The Participant agrees to be filmed and audiotaped by the Producer for a *documentary-style film*." *Id.* ¶ 1 (emphasis added). That paragraph specifically states that "It is understood that the *Producer hopes to reach a young adult audience by using entertaining content and formats.*" *Id.* (emphasis added). Further, the Release clearly states that Plaintiff will not bring any claims based on any "offensive behavior or questioning." *Id.* ¶ 4(d). As a result, like in *Weil*, the Release here clearly indicated the Film was not merely a documentary on America, but rather an entertaining documentary-*style* film aimed at young adults that may involve "offensive behavior." As a result, it is immaterial that Plaintiff did not have his glasses or was allegedly told that the Film was a documentary on America – he cannot

12

now disregard the clear provisions in the Release that he admits he signed.  Therefore his fraudulent inducement claim must fail.

**C.    Plaintiff's Fraudulent Inducement Claim Also Must Fail Because The Release States That Plaintiff Was Not Relying On Any Statements About The Nature Of The Film**

This Court also should dismiss Plaintiff's fraudulent inducement claim because the Release clearly states that Plaintiff was not relying on any representations about the nature of the Film.  Under New York law, when a release "expressly states that the releasor disclaims the existence of or reliance upon specified representations, that party will not be allowed to claim that he was defrauded into entering the contract in reliance on those representations." *Fonseca v. Columbia Gas Sys., Inc.,* 37 F. Supp. 2d 214, 229 (W.D.N.Y. 1998).  *See also Scala,* 1995 WL 225625, at *6 (holding that plaintiff "is barred from pursuing his claim that he was defrauded into signing his contracts ... [because plaintiff] disclaimed reliance upon any representations"); *Citibank, N.A. v. Plapinger*, 66 N.Y.2d 90, 95, 495 N.Y.S.2d 309, 312 (1985) ("the substance of [the parties'] guarantee [that it was absolute and unconditional] forecloses their reliance on the claim that they were fraudulently induced to sign the guarantee by the banks' oral promise of an additional line of credit.").

Here, the Release Plaintiff admittedly signed clearly states that Plaintiff "acknowledges that in entering into [the Release, Plaintiff], is not relying upon any promises or statements made by anyone about the *nature of the Film* or the identity of any other Participants or persons involved in the Film."  Release ¶ 5 (emphasis added).  Indeed, Plaintiff waived his right to bring a fraud claim against the Defendants based on "any alleged deception or surprise about the Film or this consent agreement."  *Id.* ¶ 4.  The law is clear that having disclaimed his reliance on *any* representations about the nature of the Film, Plaintiff is estopped from claiming that he relied on

13

the alleged misrepresentations when signing the Release.  As such, Plaintiff's fraudulent inducement claim should be dismissed.

### III.
### PLAINTIFF'S CLAIM FOR COMMERCIAL MISAPPROPRIATION MUST BE DISMISSED BECAUSE PLAINTIFF SIGNED THE RELEASE

Plaintiff's third cause of action for commercial misappropriation pursuant to New York Civil Rights Law ("CRL") § 51 ("Section 51") must fail, because the Release completely bars this claim.[8]

New York Civil Rights Law Section 51 provides that "Any person whose name, portrait, picture or voice is used within this state for advertising purposes or for the purposes of trade" *without the written consent of the plaintiff* can bring an action to enjoin such use and obtain civil damages.  N.Y. CRL § 51 (emphasis added).  In order to state a claim under Section 51, a plaintiff must establish three elements: (1) defendants used his name, portrait, picture or voice within the state of New York; (2) for purposes of trade or advertising; (3) *without his written consent*.  *Finger v. Omni Publ'ns Int'l*, 77 N.Y.2d 138, 141, 564 N.Y.S.2d 1014, 1016 (1990); *Nussenzweig v. DiCorcia*, 11 Misc. 3d 1051(A), 814 N.Y.S.2d 891, 2006 WL 304832, at *5 (Sup. Ct. N.Y. Co. Feb. 8, 2006), *aff'd*, 38 A.D.3d 339, 832 N.Y.S.2d 510 (1st Dep't 2007).  Section 51 is to be "narrowly construed" and "strictly limited to *nonconsensual* commercial appropriations of the name, portrait or picture of a living person." *Messenger v. Gruner + Jahr Printing and Publ'g*, 94 N.Y.2d 436, 441, 706 N.Y.S.2d 52, 55 (2000) (citations omitted)

---

[8] While Plaintiff does not allege what section of the CRL he alleges Defendants violated, Plaintiff's allegation that "Defendants used plaintiff's likeness in the Borat film without his consent for the purposes of trade ..." is likely an attempt to allege a Section 51 claim.  Complaint ¶ 42.  Indeed, Section 51 is the *only* claim for misappropriation of likeness available under New York law.  *See Howell v. New York Post Co.*, 81 N.Y.2d 115, 123, 596 N.Y.S.2d 350, 354 (1993) ("in this State the right to privacy is governed exclusively by sections 50 and 51 of the Civil Rights Law; we have no common law of privacy.")  Accordingly, for the purposes of this motion, Defendants assume Plaintiff intended to allege a Section 51 claim.

(emphasis added).  Accordingly, it is axiomatic that a valid release bars a Section 51 claim. *Myskina v. Conde Nast Publ'ns, Inc.*, 386 F. Supp. 2d 409, 414-15 (S.D.N.Y. 2005) (dismissing Section 51 claim, although Plaintiff alleged that her release "was not knowingly or intelligently signed" due to a "language barrier" and her failure to "read its contents," because, the court held, her "claimed misunderstanding of the Release's terms does not excuse her from being bound on the contract"); *Ruffino v. Neiman,* 17 A.D.3d 998, 1000, 794 N.Y.S.2d 228, 229 (4th Dep't 2005) (plaintiff's Section 51 claim must fail due to his written consent).

For example, in *Ruffino v. Neiman,* the plaintiff asserted a Section 51 claim based on his allegations that the defendant, a dermatologist, "improperly published a newspaper advertisement containing photographs taken of plaintiff before and after hair transplant surgery ...." 17 A.D.3d at 999, 794 N.Y.S.2d at 228.  The plaintiff had signed a general release for his photographs, but claimed that he was assured by the defendants that "the photographs would not be published or used 'outside of the office.'"  *Id.* 17 A.D.3d at 999, 794 N.Y.S.2d at 229.  The Court dismissed the Section 51 claim because "the alleged misrepresentations ... directly conflict with the terms of the written consent and thus plaintiff cannot be said to have justifiable relied on the alleged misrepresentations," and, therefore, the release completely barred his Section 51 claim.  *Id.* 17 A.D.3d at 1000, 794 N.Y.S.2d at 229.

Similarly here, Plaintiff cannot escape the consequences of the Release, in which he consented to appear in the Film and where he clearly released his right to bring any claim based on "any allegedly improper or unauthorized use of [Plaintiff's] name or likeness or image" in the Film.  Release ¶ 4(a). [9]  Thus, his consent to appear in the Film completely bars his Section 51

---

[9] Because it is clear that the Release is valid and therefore completely bars Plaintiff's Section 51 claim, Defendants do not discuss the other defense to Plaintiff's claim: the fact that the Film is newsworthy, and Plaintiff's image bears a real relationship to the theme of the Film.  *See*

claim.

### IV.
### PLAINTIFF'S CLAIM FOR QUANTUM MERUIT IS SUBSUMED BY HIS MISAPPROPRIATION CLAIM, AND THEREFORE SHOULD BE DISMISSED

In his fourth cause of action, Plaintiff has brought a claim for quantum meruit stemming from the alleged misappropriation of Plaintiff's image.  Complaint ¶ 47.  However, it is well settled that this claim is duplicative of Plaintiff's Section 51 claim, and therefore cannot stand.

One court explained the duplicative nature of a Section 51 claim and a quantum meruit/unjust enrichment claim by noting:

> The New York Civil Rights law preempts all common law claims based on unauthorized use of name, image, or personality….  The Civil Rights Law does not simply cover or define common law claims, it provides an exclusive remedy for cases such as the one at bar.  That is to say there *is no* cause of action for unjust enrichment arising from the alleged unauthorized use of personal image.

*Zoll v. Ruder Finn, Inc.,* No. 02 Civ. 3652 (CSH), 01 Civ. 1339 (CSH), 2004 WL 42260 , at *4 (S.D.N.Y. Jan. 7, 2004) (emphasis in original) (dismissing unjust enrichment claim based on the alleged unauthorized use of plaintiff's image in two videotapes).  *See also Myskina*, 386 F. Supp. 2d at 420 ("Under New York law, common law unjust enrichment claims for unauthorized use of an image or likeness are subsumed by Sections 50 and 51."); *Hampton v. Guare*, 195 A.D.2d 366, 366-67, 600 N.Y.S.2d 57, 58-59 (1st Dep't 1993) (common law claims barred because "plaintiff has no property interest in his image, portrait or personality outside the protections granted by the Civil Rights Law").

Here, Plaintiff's Section 51 claim and his quantum meruit claim stem from the exact same set of facts regarding Plaintiff's appearance in the Film.  *See* Complaint ¶¶ 47-48 ("By

---

*Messenger*, 94 N.Y.2d at 441-43, 706 N.Y.S.2d at 55-57 (Section 51 "do[es] not apply to reports of newsworthy events or matters of public interest [and] 'newsworthiness' is to be broadly construed....").  However, for this motion, this Court need only focus on the valid Release that completely bars Plaintiff's claim.

\\\NY - 027721/000007 - 1070406 v3

*misappropriating Plaintiff's likeness without his consent* ... Defendants have been unjustly enriched") (emphasis added). The law is absolutely clear that the *only* claim based on the unauthorized use a plaintiff's likeness or image is under Section 51. As such, Plaintiff's quantum meruit claim is duplicative of his Section 51 claim and should be dismissed.

Further, Plaintiff specifically released his right to bring any claim that is based on "any allegedly improper or unauthorized use of [Plaintiff's] name or likeness or image" in the Film. Release ¶ 4(a). Plaintiff is also precluded from bringing a claim for "breach of any alleged contract (whether the alleged contract is verbal or in writing)." *Id.* ¶ 4(h). As such, there is no question that Plaintiff's quantum meruit claim is subsumed by this Section 51 claim and barred by the Release. Therefore, Plaintiff's quantum meruit claim must be dismissed.

## V.
### PLAINTIFF'S CLAIM FOR PRIMA FACIE TORT MUST FAIL BECAUSE HE CANNOT ESTABLISH THE NECESSARY ELEMENTS TO MAINTAIN SUCH A CLAIM

This Court should dismiss Plaintiff's fifth and final cause of action for prima facie tort because Plaintiff specifically released his right to bring such a claim. (Release ¶ 4(m)). Moreover, because Defendants' alleged conduct was not the product of disinterested malevolence, and Plaintiff cannot establish special damages, that claim also fails on the merits.

Under New York law, "Prima facie tort affords a remedy for 'the intentional infliction of intentional harm, resulting in damage, without excuse or justification, by an act or series of acts which would otherwise be lawful.'" *Freihofer v. Hearst Corp.,* 65 N.Y.2d 135, 142, 490 N.Y.S.2d 735, 740 (1985) (citations omitted). Accordingly, to establish a claim for prima facie tort, a plaintiff must prove "(1) the intentional infliction of harm; (2) resulting in special damages; (3) without excuse or justification; (4) by an act that would otherwise be lawful." *Twin Labs., Inc. v. Weider Health & Fitness*, 900 F.2d 566, 571 (2d Cir. 1990). Courts have stated that, "The

17

touchstone [of the tort] is 'disinterested malevolence', meaning that the plaintiff cannot recover unless the defendant's conduct was not only harmful, but done with the *sole intent to harm*.... motives other than disinterested malevolence, such as profit, self-interest, or business advantage will defeat a prima facie tort claim." *Id.* (emphasis added) (holding that defendants were not liable for prima facie tort for their refusal to publish competitors' advertisements because refusal was motivated by self-interest). Indeed, when "an act is a product of mixed motives, some of which are perfectly legitimate then recovery in prima facie tort is impossible." *Fabry v. Meridian Vat Reclaim, Inc.,* Nos. 99 Civ. 5149 (NRB), 99 Civ. 5150 (NRB), 2000 WL 1515182, at *2-3 (S.D.N.Y. Oct. 11, 2000) (internal citations and quotations omitted) (dismissing prima facie tort claim based on libelous material because, even assuming "one of [defendant's] motives here was to" injure the plaintiff, defendants were also motivated by business advantage).

Moreover, this Court has repeatedly stated that "prima facie tort is not a 'catch all' alternative for every cause of action that cannot stand on its own legs. A party will not be able to take a defective claim for … any ... intentional tort and simply recast it as one for prima facie tort." *Church of Scientology of California v. Siegelman,* 94 F.R.D. 735, 738 (S.D.N.Y. 1982) (internal citations and quotations omitted). *See also Colina v. One East River Place Realty Co., LLC,* No. 99 Civ. 5173 (DC), 2000 WL 1171126, at *6 (S.D.N.Y. Aug. 17, 2000) (dismissing a prima facie tort claim because plaintiff "merely repeats all the facts set forth in support of her [other] claims...."); *Eavzan v. Polo Ralph Lauren Corp.*, 40 F. Supp. 2d 147, 152 (S.D.N.Y. 1998) (dismissing a prima facie tort claim because plaintiff was trying to assert a "catch-all" claim by merely "reformulat[ing] ... the same facts into a separate cause of action); *Freihofer*, 65 N.Y.2d at 143, 490 N.Y.S.2d at 741 ("prima facie tort should not become a 'catch-all' alternative for every cause of action which cannot stand on its own legs.").

Here, Plaintiff is simply asserting a prima facie tort claim as a "catch-all" alternative for his first four defective claims. Indeed, in supporting his prima facie tort claim, Plaintiff merely alleges that "All prior averments are repeated" and "Defendants' conduct constitutes prima facie tort." Complaint ¶¶ 51, 52. These are exactly the type of "catch-all" allegations that courts routinely find insufficient to support a prima facie tort claim.

Additionally, Plaintiff's prima facie tort claim also fails as a matter of law because it is clear that Defendants were not solely motivated by an intent to harm Plaintiff. Indeed, Plaintiff does not allege in the Complaint that the Defendants were motivated by "disinterested malevolence" or that they intended to harm Plaintiff at all. Further, Plaintiff cannot make such an allegation, because it is clear that in using Plaintiff's likeness in the Film, Defendants were motivated, in whole or in part, to create an entertaining and profitable film. As such, Plaintiff cannot show that Defendants included Plaintiff in the Film with the "sole intent to harm," as required for his prima facie tort claim.[10] *See Twin Labs., Inc.*, 900 F.2d at 571.

Finally, this Court should also dismiss Plaintiff's prima facie tort claim because Plaintiff has not, and indeed cannot, allege that he has suffered any special damages. Under New York law, "a critical element of the cause of action [for prima facie tort] is that the plaintiff suffered specific and measurable loss, which requires an allegation of special damages." *Freihofer*, 65 N.Y.2d at 143, 490 N.Y.S.2d at 741. It is insufficient to allege damages in a general fashion, such as "'in the amount of not less than one hundred thousand dollars.'" *Wehringer v. Helmsley-*

---

[10] Additionally, in *Freihofer,* the New York Court of Appeals held that a prima facie tort claim fails as a matter of law if it is based on the publication of newsworthy content, which is "sufficient justification for its publication." 65 N.Y.2d at 143, 490 N.Y.S.2d at 741. Significantly, one court has already found the Film newsworthy because it addresses the general topics of racism, sexism, homophobia, anti-Semitism, and ethnocentrism. *See Doe v. One America Prods., Inc.,* SC091723 (Sup. Ct. Los Angeles Co. Feb 15, 2007) (A true and correct copy of the decision is annexed hereto as Exhibit B).

*Spear, Inc.*, 91 A.D.2d 585, 586, 457 N.Y.S.2d 78, 80 (1st Dep't 1982) (dismissing a prima facie tort claims for failure to allege special damages).

Here, Plaintiff has utterly failed to allege special damages. *See* Complaint p. 11, ¶ E. The law is absolutely clear that the type of general allegation of damages contained in the Complaint is insufficient to allege special damages. *Id.*; *Wehringer*, 91 A.D.2d at 586, 457 N.Y.S.2d at 80. Accordingly, this Court should dismiss Plaintiff's prima facie tort claim.

## <u>CONCLUSION</u>

For all of the foregoing reasons, defendants Twentieth Century Fox Film Corporation, One America Productions, Inc., Todd Schulman and Sacha Baron Cohen respectfully request that this Court dismiss the Complaint in its entirety, with prejudice, and grant such other and further relief, together with costs, as this Court deems appropriate.

Dated: February 15, 2008

Respectfully submitted,

HOGAN & HARTSON LLP

By: s/  Slade R. Metcalf
Slade R. Metcalf  (SM 8360)
Jason P. Conti (JC 0581)
Rachel F. Strom (RS 9666)
HOGAN & HARTSON LLP
875 Third Avenue
New York, New York 10022
Tel.  (212) 918-3000
Fac.  (212) 918-3100

*Attorneys for Defendants Twentieth Century Fox Film Corporation, One America Productions, Inc., Todd Schulman, and Sacha Baron Cohen*

\\\NY - 027721/000007 - 1070406 v3

**EXHIBIT A**

**To Defendants' Memorandum of Law
in Support of Their Motion to Dismiss the Complaint**

FILED

2008 Jan-30  PM 04:26
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

CINDY STREIT, ET AL.,

        Plaintiffs,

v.                                        CV 07-J-1918-S

TWENTIETH CENTURY FOX
FILM CORPORATION, ET AL.,

        Defendants.

## ORDER

Pending before the court is the plaintiffs' Motion for Relief from Order

(doc. 31).  In their motion, the plaintiffs request the court to vacate its Order of

January 24, 2008, transferring this case to the Southern District of New York (doc.

29).  Having considered the motion and being of the opinion that it is due to be

denied for the reasons that follow, it is hereby **ORDERED** that the plaintiffs'

motion is **DENIED**.

The plaintiffs contend that they have presented enough evidence of fraud

relating to the inclusion of the forum selection clause to, at a minimum, create a

jury issue.  Plaintiff's motion at 5.  In support of this argument, the plaintiffs cite

*Blue Cross and Blue Shield of Alabama v. Woodruff*, 803 So.2d 519 (Ala. 2001),

1

for its holding that fraud in the inducement of an arbitration clause "would be determined by a jury." Plaintiff's motion at 5. Despite the plaintiffs' best efforts to the contrary, *Woodruff* provides no support for their argument. In *Woodruff*, the defendant filed a motion to compel arbitration pursuant to an arbitration clause in the plaintiff's insurance policy. *Id*. at 520-21. The plaintiff advanced "numerous 'defenses' and arguments" including fraud in the inducement as to why the case should not be submitted to arbitration. *Id*. at 523. However, the critical issue was "whether Blue Cross complied with the procedures specified in its contract for amending that contract." *Id*. at 527. The Alabama Supreme Court held that "the evidence before the trial judge was insufficient to establish that Blue Cross effectively amended the 1991 contract to add the arbitration provision." *Id.* at 528. The Court never considered nor discussed the plaintiff's allegation of fraud in the inducement.

As this court stated in its Order of January 24, 2008, the law of the Eleventh Circuit Court of Appeals is that an allegation of fraud renders a forum selection clause unenforceable solely when "the inclusion of that clause in the contract was the product of fraud or coercion." *Lipcon v. Underwriters at Lloyd's, London,* 148 F.3d 1285, 1296 (11th Cir. 1998) (citing *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 519 n. 14 (1974)); *see also Ex parte Leasecomm Communication,* 879 So. 2d

1156, 1159 (Ala. 2003) ("the proper inquiry is whether the forum-selection clause is the result of fraud in the inducement in the negotiation or inclusion in the agreement of the forum-selection clause itself . . . if the claim of fraud in the inducement is directed toward the entire contract, the fraud exception to enforcement of the forum-selection clause does not apply"). In *Scherk*, the Court specifically stated that this "does not mean that any time a dispute arising out of a transaction is based upon an allegation of fraud, as in this case, the clause is unenforceable." *Scherk*, 417 U.S. at 519 n. 14.

The fraud that the plaintiffs have asserted is that they did not thoroughly read the Standard Consent Agreement because the defendants did not allow them enough time and that they were misled by the use of the term "Standard" in the title of the contract. Plaintiff's motion at 2-5. Under Alabama law, "a person who signs a contract is on notice of the terms therein and is bound thereby even if he or she fails to read the document." *Locklear Dodge City, Inc. v. Kimbrell*, 703 So.2d 303, 306 (Ala. 1997). Had the plaintiffs read the Standard Consent Agreement, it would have been apparent from the clear and unambiguous language in the forum selection clause that all claims must be brought in the State and County of New York.

The plaintiffs' argument that they were rushed into signing the Standard

3

Consent Agreement also does not render the forum selection clause unenforceable. In *Ex parte Perry*, 744 So.2d 859 (Ala. 1999), the Alabama Supreme Court was faced with a similar set of facts in which the plaintiff argued that an arbitration provision should not be enforced because the defendant automobile dealer "hurried her through the purchase of her new Hyundai automobile and did not give her an opportunity to read the purchase-agreement form before she signed it." *Id.* at 862. The Court noted that a party is responsible for reading a contract before signing it, regardless of whether the party felt "hurried." *Id.* at 863 (noting that if the plaintiff felt hurried "she could have slowed the process down or could have refused to sign the contract until she had had time to read it in its entirety").

In regard to the use of the term "Standard" in the title of the contract, the court is of the opinion that the term "Standard" is not so misleading as to render the forum selection clause unenforceable.

The plaintiffs' final argument is that the court failed to address plaintiff McKinnon and plaintiff Moseley's health problems in its Order of January 24, 2008. The Eleventh Circuit has held that a forum selection clause will rarely "be outweighed by other 1404(a) factors." *In re Ricoh Corp.*, 870 F.2d 570, 573 (11th Cir. 1989). While the plaintiffs' health is a factor to be considered under 1404(a) which weighs in favor of the plaintiffs, it is not enough to overcome the

4

presumption in favor of enforcing the valid forum selection clause.

## Conclusion

For the above reasons, the plaintiffs' Motion for Relief from Order is hereby

**DENIED**.

**DONE** and **ORDERED** this the 30th day of January 2008.

INGE PRYTZ JOHNSON
U.S. DISTRICT JUDGE

<u>**EXHIBIT B**</u>

**To Defendants' Memorandum of Law
in Support of Their Motion to Dismiss the Complaint**

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

| | |
|---|---|
| DATE: 02/15/07 | DEPT. WEC |
| HONORABLE JOSEPH S. BIDERMAN    JUDGE | K. SANDOVAL    DEPUTY CLERK |
| | R. WHITE, CSL/CT. ASST. |
| HONORABLE    JUDGE PRO TEM | ELECTRONIC RECORDING MONITOR |
| #5 | |
| NONE    Deputy Sheriff | NONE    Reporter |

| | | |
|---|---|---|
| 2:30 pm | SC091723 | Plaintiff Counsel |
| | JOHN DOE I ET. AL. | NO APPEARANCES |
| | VS | Defendant Counsel |
| | ONE AMERICA PRODUCTIONS,INC. ET | |
| | AL. | |

NATURE OF PROCEEDINGS:

RULING ON SUBMITTED MATTER;

Court rules on Special Motion to Strike taken under
submission on February 14, 2007 as follows:

SPECIAL MOTION TO STRIKE

Evidentiary Objections

EVIDENTIARY OBJECTIONS BY DEFENDANTS

DECL OF STAUFFER

1.    Para 3 -  Sustained - hearsay
2.    Para 4 =  Sustained as to any reference to
      "producer" as hearsay
3.    Para 5 -  Sustained as to any reference to
      "producer" as hearsay

DECL OF HAMMETT

1.    Para 3 -  Overruled
2.    Para 4 -  Overruled
3.    Para 5 -  Overruled

DECL OF ROTUNDA

1.    Para 14- Sustained as to foundation
2.    Para 15- Sustained as to foundation

Page    1 of 10    DEPT. WEC

MINUTES ENTERED
02/15/07
COUNTY CLERK

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

DATE: 02/15/07                                                          DEPT. WEC

HONORABLE  JOSEPH S. BIDERMAN      JUDGE | K. SANDOVAL            DEPUTY CLERK
                                          | R. WHITE, CSL/CT. ASST.
HONORABLE                     JUDGE PRO TEM | ELECTRONIC RECORDING MONITOR
#5
         NONE                  Deputy Sheriff | NONE                    Reporter

2:30 pm | SC091723                          Plaintiff
                                            Counsel
         JOHN DOE I ET. AL.                            NO APPEARANCES
         VS
         ONE AMERICA PRODUCTIONS,INC. ET    Defendant
          AL.                               Counsel

**NATURE OF PROCEEDINGS:**

3.    Para 16-   Overruled
4.    Para 17-   Sustained as to hearsay regarding the
                 substance of the telephone calls and as
                 to foundation regarding level of
                 consequences "inevitable"
5.    Para 18    Overruled
6.    Para 19    Sustained as speculation
7.    Para 20    Overruled

Merits

As an initial matter, the Court notes that the
only issue before it today is the narrow inquiry of
whether this action constitutes what our Legislature
has denominated as a "SLAPP" - a strategic lawsuit
against public participation.  The propriety of
filming individuals, often in crude contexts and
with a disarming disguise, with the specific intent
of later embarrassing them on a national scale -
even those individuals who, on occasion, exhibit
less than admirable qualities - is not before the
Court.  Rather, the Court's role is constrained to
an examination of the legal issues presented by the
parties.  The Court cannot and does not reach the
topic of whether the Defendants' conduct is
appropriate or conscionable; the only question is
whether a legal claim survives in the manner it has
been drafted in Plaintiffs' Complaint.

Under the two-step process of Section 425.16 of

              Page   2 of 10   DEPT. WEC

                                          ┌─────────────────────┐
                                          │ MINUTES ENTERED     │
                                          │ 02/15/07            │
                                          │ COUNTY CLERK        │
                                          └─────────────────────┘

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

| | | |
|---|---|---|
| DATE: 02/15/07 | | DEPT. WEC |
| HONORABLE JOSEPH S. BIDERMAN    JUDGE | K. SANDOVAL    DEPUTY CLERK | |
| | R. WHITE, CSL/CT. ASST. | |
| HONORABLE #5    JUDGE PRO TEM | | ELECTRONIC RECORDING MONITOR |
| NONE    Deputy Sheriff | NONE    Reporter | |

| | | |
|---|---|---|
| 2:30 pm | SC091723 | Plaintiff Counsel |
| | JOHN DOE I ET. AL. | NO APPEARANCES |
| | VS | |
| | ONE AMERICA PRODUCTIONS, INC. ET AL. | Defendant Counsel |

**NATURE OF PROCEEDINGS:**

the Code of Civil Procedure, the trial court first
decides "whether the defendant has made a threshold
showing that the challenged cause of action is one
arising from protected activity .... If the court
finds such a showing has been made, it then
determines whether the plaintiff has demonstrated a
probability of prevailing on the claim." Equilon
Enterprises v. Consumer Cause, Inc. (2002) 29
Cal.4th 53, 67.  "In bringing a section 425.16
motion to strike, the defendant has the initial
burden to make a prima facie showing that the
plaintiff's claims are subject to section 425.16.
If the defendant makes that showing, the burden
shifts to the plaintiff to establish a probability
he or she will prevail on the claim at trial, i.e.,
to proffer a prima facie showing of facts supporting
a judgment in the plaintiff's favor." Roberts v.
Los Angeles County Bar Assoc. (2003) 105 Cal.App.4th
604, 613 (emphasis added).  The Court must consider
the pleadings and the evidence submitted by the
parties; it cannot weigh the evidence but instead
must simply determine whether the plaintiff's
evidence would, if credited, be sufficient to meet
the plaintiff's burden of proof.  Ramona Unified
Sch. Dist. v. Tsiknas (2005) 135 Cal.App. 4th 510,
519.

The parties dispute whether Plaintiffs' six
causes of action are subject to Section 425.16.  As
the Court indicated at the lengthy hearing on this

Page    3 of 10    DEPT. WEC

MINUTES ENTERED
02/15/07
COUNTY CLERK

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

| | | |
|---|---|---|
| DATE: 02/15/07 | | DEPT. WEC |
| HONORABLE JOSEPH S. BIDERMAN JUDGE | K. SANDOVAL | DEPUTY CLERK |
| HONORABLE JUDGE PRO TEM | R. WHITE, CSL/CT. ASST. | ELECTRONIC RECORDING MONITOR |
| #5 | | |
| NONE Deputy Sheriff | NONE | Reporter |

| | | | | |
|---|---|---|---|---|
| 2:30 pm | SC091723 | | Plaintiff Counsel | NO APPEARANCES |
| | JOHN DOE I ET. AL. VS ONE AMERICA PRODUCTIONS, INC. ET AL. | | Defendant Counsel | |

NATURE OF PROCEEDINGS:

motion, the Court concludes that Defendants have
satisfied their initial burden under the anti-SLAPP
statute.

Plaintiffs argue that this case is about
misrepresentations, not conduct in furtherance of
free speech rights.  However, the last four causes
of action stated in Plaintiffs' complaint
indisputably arise from Defendants' communications
(i.e., the movie).  As to the first two causes of
action (fraud and rescission), though couched in
fraud, their gravamen, or principal thrust, goes to
the exhibition of the movie.  See, e.g., Complaint,
paras. 16-18, 21, and 26; Martinez v. Metabolife
Internat. Inc. (2003) 113 Cal.App.4th 181, 188
("[I]t is the principal thrust or gravamen of the
plaintiff's cause of action that determines whether
the anti-SLAPP statute applies...").  Indeed, at
oral argument counsel effectively conceded, as he
must, that this action would not exist at all if the
movie were not playing in the United States.

Further, it is beyond reasonable dispute (and
undisputed) that the topics addressed and skewered
in the movie - racism, sexism, homophobia,
xenophobia, anti- semitism, ethnocentrism, and other
societal ills - are issues of public interest, and
that the movie itself has sparked significant public
awareness and debate about these topics.  "The
definition of 'public interest' within the meaning

MINUTES ENTERED
02/15/07
COUNTY CLERK

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

DATE: 02/15/07

HONORABLE  JOSEPH S. BIDERMAN        JUDGE

HONORABLE
#5            NONE            JUDGE PRO TEM

Deputy Sheriff

DEPT. WEC

K. SANDOVAL            DEPUTY CLERK
R. WHITE, CSL/CT. ASST.
                    ELECTRONIC RECORDING MONITOR
NONE            Reporter

| 2:30 pm | SC091723 | Plaintiff Counsel | NO APPEARANCES |
|---------|----------|-------------------|----------------|
|         | JOHN DOE I ET. AL. | | |
|         | VS | Defendant Counsel | |
|         | ONE AMERICA PRODUCTIONS, INC. ET AL. | | |

**NATURE OF PROCEEDINGS:**

of the anti-SLAPP statute has been "broadly construed." Damon v. Ocean Hills Journalism Club (2000) 85 Cal.App.4th 468, 479. Thus, a statement or activity has been held to be in the public interest when it involves a topic of widespread interest. Rivero v. American Fed. of State, County & Mun. Employees, AFL-CIO (2003) 105 Cal.App. 4th 913, 924. Likewise, "[m]ajor societal ills are issues of public interest." Lieberman v. KCOP Television, Inc. (2003) 110 Cal.App.4th 156, 164.

The movie is not about whether these specific plaintiffs held racist, sexist, or anti- Semitic views, but rather concerns the general topics of racism, sexism, homophobia, anti-Semitism, and ethnocentrism, which (as previously noted) are issues of public interest. See, M.G. v. Time Warner, Inc. (2001) 89 Cal.App.4th 623, 629 (courts are to look at the broad topic of an article or program in determining whether the act in furtherance of free speech was related to a public issue). In addition, several cases have held that the anti-SLAPP statute applies to private communications concerning public issues. E.g., Averill v. Superior Court (1996) 42 Cal.App.4th 1170, 1175; Ruiz v. Harbor View Community Assn. (2005) 134 Cal.App.4th 1456, 1470; Integrated Health Care Holdings v. Fitzgibbons (2006) 140 Cal.App.4th 515, 525, fn. 4.

Page    5 of 10    DEPT. WEC

MINUTES ENTERED
02/15/07
COUNTY CLERK

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

| DATE: 02/15/07 | | | DEPT. WEC |
|---|---|---|---|
| HONORABLE JOSEPH S. BIDERMAN | JUDGE | K. SANDOVAL | DEPUTY CLERK |
| | | R. WHITE, CSL/CT. ASST. | |
| HONORABLE #5 | JUDGE PRO TEM | | ELECTRONIC RECORDING MONITOR |
| NONE | Deputy Sheriff | NONE | Reporter |

| 2:30 pm | SC091723 | Plaintiff Counsel | NO APPEARANCES |
|---|---|---|---|
| | JOHN DOE I ET. AL. VS ONE AMERICA PRODUCTIONS, INC. ET AL. | Defendant Counsel | |

**NATURE OF PROCEEDINGS:**

In addition to the foregoing, the Court concludes that application of CCP 425.16 to the unusual fact pattern before the Court would further that statute's purpose of encouraging participation in matters of public significance.

Insofar as Defendants have satisfied their initial burden under CCP 425.16, the burden now shifts to Plaintiffs to establish a probability that they will prevail at trial by making a prima facie showing as to each cause of action. The Court concludes that Plaintiffs have failed to satisfy this burden as to any cause of action.

Plaintiffs' opposition brief fails to address several of the arguments raised by Defendants with regard to the fraud claim, such as the lack of actual, definite damages. Plaintiffs' evidence in this regard is virtually non-existent.

Plaintiffs have failed to show a basis for the equitable remedy of rescission. The Court could not possibly return Plaintiffs to anything remotely close to the status quo ante. Indeed, the rescission claim is, in effect, seeking a backdoor permanent injunction against displaying Plaintiffs' images, etc. on DVD, without satisfying the stringent requirements for that type of injunction.

Plaintiffs' opposition brief does not in any

Page    6 of 10    DEPT. WEC

MINUTES ENTERED
02/15/07
COUNTY CLERK

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

| | | |
|---|---|---|
| DATE: 02/15/07 | | DEPT. WEC |
| HONORABLE JOSEPH S. BIDERMAN | JUDGE | K. SANDOVAL    DEPUTY CLERK |
| | | R. WHITE, CSL/CT. ASST. |
| HONORABLE | JUDGE PRO TEM | ELECTRONIC RECORDING MONITOR |
| #5 | | |
| NONE | Deputy Sheriff | NONE    Reporter |

| | | | |
|---|---|---|---|
| 2:30 pm | SC091723 | Plaintiff Counsel | |
| | JOHN DOE I ET. AL. | | NO APPEARANCES |
| | VS | Defendant Counsel | |
| | ONE AMERICA PRODUCTIONS, INC. ET AL. | | |

**NATURE OF PROCEEDINGS:**

manner respond to Defendants' argument that they did not portray Plaintiffs in a false light. Motion, 15:8-19.

With regard to Plaintiffs' mis-titled claim for "statutory false light" (which is actually a claim based on the statutory right of publicity) and Plaintiffs' claim for common law misappropriation of likeness, Defendants simply have the more persuasive arguments, particularly with regard to those based on the First Amendment. Indeed, the Court cannot stress too highly the importance of the free speech rights at stake in this case. Movies are of significant public interest. "It cannot be doubted that motion pictures are a significant medium for the communication of ideas. They may affect public attitudes and behavior in a variety of ways, ranging from direct espousal of a political or social doctrine to the subtle shaping of thought which characterizes all artistic expression. The importance of motion pictures as an organ of public opinion is not lessened by the fact that they are designed to entertain as well as to inform." Joseph Burstyn, Inc. v. Wilson (1952) 343 U.S. 495, 501, 72 S.Ct. 777, 96 L.Ed. 1098 (fn. omitted). The fact that movies are made for private profit does not diminish the fact movies are "a form of expression whose liberty is safeguarded by the First Amendment." Id. at 501-502, 72 S.Ct. 777 (fn. omitted). See also, Guglielmi v. Spelling-Goldberg

Page    7 of 10    DEPT. WEC

MINUTES ENTERED
02/15/07
COUNTY CLERK

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

| | |
|---|---|
| DATE: 02/15/07 | DEPT. WEC |
| HONORABLE JOSEPH S. BIDERMAN    JUDGE | K. SANDOVAL    DEPUTY CLERK |
| | R. WHITE, CSL/CT. ASST. |
| HONORABLE    JUDGE PRO TEM | ELECTRONIC RECORDING MONITOR |
| #5 | |
| NONE    Deputy Sheriff | NONE    Reporter |

| | | |
|---|---|---|
| 2:30 pm | SC091723 | |
| | | Plaintiff Counsel |
| | JOHN DOE I ET. AL. | NO APPEARANCES |
| | VS | Defendant Counsel |
| | ONE AMERICA PRODUCTIONS, INC. ET AL. | |

**NATURE OF PROCEEDINGS:**

Productions (1979) 25 Cal.3d 860.  This movie in particular, which is part fiction and part documentary, utilizes the reactions and statements of people such as Plaintiffs to subversively satirize the true targets of the movie: ethnocentrism, sexism, racism, and the like.

Plaintiffs' claim for "negligent infliction of emotional distress," which is really a claim for negligence, fails.  Plaintiffs have failed to identify the duty which they contend Defendants owed them, and the manner in which Defendants breached said duty.  Further, insofar as the movie is partly a work of fiction, the cause of action is arguably barred by Polydoros v. Twentieth Century Fox Film Corp. (1997) 67 Cal.App.4th 318, 326 ("Respondents are 'immune' from liability because they have a constitutional right to free expression, which they exercised when they made and released this film")

Motion is granted in full.  Defendants are to serve and lodge a proposed order pursuant to CRC 3.1312.  They are to concurrently serve and lodge a proposed revised judgment of dismissal as to the complaint in its entirety.

Any request for attorney's fees pursuant to CCP 425.16(c) may be made by separate motion supported by admissible evidence showing in detail the amount of reasonable time spent on the motion to strike and

Page    8 of 10    DEPT. WEC

MINUTES ENTERED
02/15/07
COUNTY CLERK

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

| DATE: 02/15/07 | | DEPT. WEC |
|---|---|---|
| HONORABLE JOSEPH S. BIDERMAN | JUDGE | K. SANDOVAL    DEPUTY CLERK |
| | | R. WHITE, CSL/CT. ASST. |
| HONORABLE #5 | JUDGE PRO TEM | ELECTRONIC RECORDING MONITOR |
| NONE | Deputy Sheriff | NONE    Reporter |

| 2:30 pm | SC091723 | | |
|---|---|---|---|
| | JOHN DOE I ET. AL. | Plaintiff Counsel | NO APPEARANCES |
| | VS | | |
| | ONE AMERICA PRODUCTIONS, INC. ET AL. | Defendant Counsel | |

NATURE OF PROCEEDINGS:

the fees motion.

Clerk to give notice.  Counsel for plaintiff to promptly notice remaining parties.

### CLERK'S CERTIFICATE OF MAILING/
### NOTICE OF ENTRY OF ORDER

I, the below named Executive Officer/Clerk of the above-entitled court, do hereby certify that I am not a party to the cause herein, and that this date I served Notice of Entry of the above minute order of 2-15-07 upon each party or counsel named below by depositing in the United States mail at the courthouse in Los Angeles, California, one copy of the original entered herein in a separate sealed envelope for each, addressed as shown below with the postage thereon fully prepaid.

Date: February 15, 2007

John A. Clarke, Executive Officer/Clerk

By: _____
          K. Sandoval


OLIVIER A. TAILLIEU, ESQ.        WALT SADLER, ESQ.
9595 WILSHIRE BOULEVARD          LEOPOLD, PETRICH & SMITH

                    Page    9 of 10    DEPT. WEC

> MINUTES ENTERED
> 02/15/07
> COUNTY CLERK

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

DATE: 02/15/07

DEPT. WEC

HONORABLE  JOSEPH S. BIDERMAN            JUDGE

K. SANDOVAL                    DEPUTY CLERK
R. WHITE, CSL/CT. ASST.

HONORABLE                       JUDGE PRO TEM
#5

ELECTRONIC RECORDING MONITOR

NONE                        Deputy Sheriff

NONE                            Reporter

2:30 pm  SC091723

JOHN DOE I ET. AL.
VS
ONE AMERICA PRODUCTIONS, INC. ET
AL.

Plaintiff
Counsel

NO APPEARANCES

Defendant
Counsel

NATURE OF PROCEEDINGS:

9TH FLOOR                    SUITE 3110
BEVERLY HILLS, CA   90212    2049 CENTURY PARK EAST
                             LOS ANGELES, CA   90067

Page  10 of 10    DEPT. WEC

MINUTES ENTERED
02/15/07
COUNTY CLERK