Slade R. Metcalf (SM 8360)
Katherine M. Bolger (KM 6206)
Rachel F. Strom (RS 9666)
Hogan & Hartson LLP
875 Third Avenue
New York, NY  10022
Telephone: (212) 918-3000
Facsimile: (212) 918-3100

*Attorneys for Defendants Twentieth Century Fox*
*Film Corporation, One America Productions, Inc.,*
*Todd Schulman, and Sacha Baron Cohen*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X

| | |
|---|---|
| MICHAEL PSENICSKA, | : |
| | : |
| Plaintiff, | : Case No.: 07 CIV 10972 (LAP) |
| | : |
| -against- | : |
| | : |
| TWENTIETH CENTURY FOX FILM CORPORATION, | : |
| ONE AMERICA PRODUCTIONS, INC., | : |
| TODD LEWIS, and | : |
| SACHA BARON COHEN, | : |
| | : |
| Defendants. | : |
| | : |

------------------------------------------------------------------------X

**DEFENDANTS' REPLY MEMORANDUM OF LAW IN FURTHER
SUPPORT OF THEIR MOTION TO DISMISS THE COMPLAINT**

**TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES………………………………………………………………….....ii

PRELIMINARY STATEMENT ........................................................................................................1

ARGUMENT .........................................................................................................................................2

I. THE RELEASE BARS PLAINTIFF'S COMPLAINT IN ITS ENTIRETY ...............................2

    A. Plaintiff Is Bound By The Release........................................................................................2

    B. The Release Accurately Describes The Film........................................................................5

II. THIS COURT SHOULD DISMISS PLAINTIFF'S QUANTUM MERUIT CLAIM ................8

CONCLUSION....................................................................................................................................10

**TABLE OF AUTHORITIES**

**Page**

**Federal Cases**

*Fonseca v. Columbia Gas Sys., Inc.*,
    37 F. Supp. 2d 214 (W.D.N.Y. 1998) .................................................................................. 4

*Johnston v. One America Prods., Inc.*,
    No. 2:07CV042-P-B, 2007 WL 2903218 (N.D. Miss. Oct. 2, 2007) ....................................... 6

*JP Morgan Chase Bank v. Liberty Mutual Ins. Co.*,
    189 F. Supp. 2d 24 (S.D.N.Y. 2002) ..................................................................................... 3

*Lemerond v. Twentieth Century Fox Film Corp.*,
    No. 07 Civ. 4635 (LAP), 2008 WL 918579 (S.D.N.Y. Mar. 31, 2008) ............................... 7, 9

*Mfrs. Hanover Trust Co. v. Yanakas*,
    7 F.3d 310 (2d Cir. 1993) ................................................................................................... 2, 3

*O'Hearn v. Bodyonics, Ltd.*,
    22 F. Supp. 2d 7 (E.D.N.Y. 1998) .......................................................................................... 3

*Scala v. Sequor Group, Inc.*,
    No. 94 Civ. 0449 (LAP), 1995 WL 225625 (S.D.N.Y. Apr. 14, 1995) ..................................... 4

*Zoll v. Jordache Enters., Inc.*,
    No. 01 Civ. 1339 (CSH), 2002 WL 31873461 (S.D.N.Y. Dec. 24, 2002) ............................... 8

**State Cases**

*Doe v. One America Prods., Inc.*,
    SC091723 (Sup. Ct. Los Angeles Co. Feb 15, 2007) ............................................................. 6

*Freedman v. Pearlman*,
    271 A.D.2d 301, 706 N.Y.S.2d 405 (1st Dep't 2000) ............................................................ 9

*Touloumis v. Chalem*,
    156 A.D.2d 230, 548 N.Y.S.2d 493 (1st Dep't 1989) ............................................................ 2

*Weil v. Johnson*,
    No. 119431/02, 2002 WL 31972157 (Sup. Ct. N.Y. Co. Sept. 27, 2002) ............................ 2, 7

**Federal Statutes**

Fed. R. Civ. P. 12(b)(6) ............................................................................................................. 1

**State Statutes**

New York Civil Rights Law § 51 ................................................................................................8, 9

Defendants Twentieth Century Fox Film Corporation ("Fox"), One America Productions, Inc. ("One America"), Todd Schulman ("Schulman") (incorrectly sued herein as "Todd Lewis"), and Sacha Baron Cohen ("Cohen") (collectively, "Defendants"), by their undersigned attorneys, respectfully submit this reply memorandum of law in further support of their motion to dismiss the complaint of plaintiff Michael Psenicska ("Plaintiff") pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure ("Fed. R. Civ. P.").[1]

**Preliminary Statement**

Plaintiff spends several pages in his opposition memorandum trying to persuade the Court of his opinion as to what constitutes a "documentary" in an effort to avoid the terms of the specific Release[2] that he signed without reading. While there are many flaws to his approach, the most obvious problem with his argument is that the Release he signed refers to a "documentary-style" motion picture, which is an accurate description of the Film. Indeed, courts that have viewed the Film have already determined that the Film is part documentary and part fiction. In short, Plaintiff cannot avoid the clear and specific terms of the Release by seeking to reframe the subject matter of the Film. The Release conclusively bars his claims here.

---

[1] The facts necessary for the determination of this motion are set forth in the declarations of Joan Hansen ("Hansen Decl."), sworn to on the 14th day of February, 2008, and of Slade R. Metcalf, ("Metcalf Decl."), sworn to on the 15th day of February, 2008, and the exhibits annexed thereto, submitted with the Defendants' Memorandum of Law in Support of Their Motion to Dismiss the Amended Complaint (the "Opening Memorandum").

[2] All defined terms in this memorandum of law have the meanings given to them in the Opening Memorandum.

# ARGUMENT

## I.
## THE RELEASE BARS PLAINTIFF'S COMPLAINT IN ITS ENTIRETY

In Plaintiff's Memorandum of Law in Opposition to Defendant's Motion to Dismiss (the "Opposition"), Plaintiff advances two wholly inconsistent theories in an effort to survive Defendants' motion. First, Plaintiff repeats the allegations in his Complaint that he is not bound by the Release because he was fraudulently induced to sign it. At the same time, Plaintiff advances a second, new and desperate argument that the Release itself is misleading because the Film is not truly a "documentary-*style*" motion picture as described in the Release. But, neither the old theory nor the new theory can save Plaintiff's claim. Instead, the Release is valid and bars Plaintiff's Complaint in its entirety.

### A.     Plaintiff Is Bound By The Release

First, as set forth more fully in the Opening Memorandum, the law is clear that Plaintiff cannot rely on Defendants' alleged oral misrepresentations to invalidate the Release because he is bound by the terms of the Release he signed. *See Touloumis v. Chalem*, 156 A.D.2d 230, 231-32, 548 N.Y.S.2d 493, 494-95 (1st Dep't 1989); *Weil v. Johnson*, No. 119431/02, 2002 WL 31972157, at *1-2 (Sup. Ct. N.Y. Co. Sept. 27, 2002). But in the Opposition, Plaintiff, an experienced businessman, Complaint ¶ 12, who concedes that he signed the Release without so much as reading it, seeks to avoid this clear precedent by claiming that the Release is insufficiently specific to bar his fraudulent inducement claim. Opp. at 15-18.

In support of this argument, Plaintiff cites a number of cases that hold that a *general* merger clause that simply states that a release is "unconditional and absolute" is insufficient to bar a fraudulent inducement claim. *See Mfrs. Hanover Trust Co. v. Yanakas,* 7 F.3d 310, 316 (2d Cir. 1993) (Opp. at 15-17). But, these cases also hold that "[w]hen, however, the contract states

that a contracting party disclaims the existence of or reliance upon *specified representations*, that party will not be allowed to claim that he was defrauded into entering the contract in reliance on those representations." *Id.* at 315 (emphasis added).  Plaintiff has also relied on the following cases, which also support Defendants' position: *O'Hearn v. Bodyonics, Ltd.*, 22 F. Supp. 2d 7, 13 (E.D.N.Y. 1998) ("a specific disclaimer denying reliance on certain oral representations can render parol evidence inadmissible even to substantiate a claim of fraud. . . . A specific disclaimer typically consists of a clause stipulating that the parties are not 'relying' upon specified, extra-contractual representations") (internal citations omitted) (Opp. at 15); *JP Morgan Chase Bank v. Liberty Mutual Ins. Co.,* 189 F. Supp. 2d 24, 27 (S.D.N.Y. 2002) (a specific disclaimer "that is, a clear indication that the disclaiming party has knowingly disclaimed reliance on the specific representations that form the basis of the fraud claim" will bar the fraud claim) (Opp. at 16-17).

      Here, the disclaimer in the Release plainly contains specified representations that bar Plaintiff's fraudulent inducement claim.  It reads: Plaintiff "acknowledges that in entering into [the Release, Plaintiff] is not relying upon any promises or statements made by anyone about the *nature of the Film* or the identity of any other Participants or persons involved in the Film." Release ¶ 5 (the "Disclaimer") (emphasis added).  (A true and correct copy of the Release and its cover page is annexed as Exhibit A to the Hansen Decl.).  As such, the Disclaimer specifically rejects the *exact* misrepresentations on which Plaintiff now alleges he relied in entering the Release.  *Cf.* Complaint ¶ 29 ("The representations . . . were made to induce plaintiff to appear in the Borat film, *the true nature of which* was never disclosed to plaintiff" and Schulman "deliberately deceived plaintiff about the purpose of the purported documentary . . . .")

3

(emphasis added). As such, according to the very cases on which Plaintiff relies, the Release is valid.

Indeed, the cases Plaintiff cites as examples of enforceable releases contained language *less* specific than that at issue here. For example, at issue in *Scala v. Sequor Group, Inc.*, No. 94 Civ. 0449 (LAP), 1995 WL 225625 (S.D.N.Y. Apr. 14, 1995) (Preska, J.), was a broad disclaimer that stated: "This Agreement . . . supersedes all prior contemporaneous agreements, representations and understandings of the parties . . . [and] . . . supersedes and replaces all prior negotiations and agreements, written and oral." This very Court found that that disclaimer *was* specific enough to hold that plaintiff "disclaimed reliance upon any representations" and thus the disclaimer was valid and "barred [plaintiff] from pursuing his claim that he was defrauded in signing his contracts." *Id.* at *6. *See also Fonseca v. Columbia Gas Sys., Inc.*, 37 F. Supp. 2d 214, 229 (W.D.N.Y. 1998) (upholding validity of similar disclaimer). Here, the Disclaimer was specifically targeted to *any representations about the nature of the Film.* Release ¶ 5. As such, the Disclaimer is *more* specific than the one at issue in *Scala* and bars Plaintiff's claim for fraud based on any misrepresentations about the nature of the Film.

Second, Plaintiff claims that the Release does not bar his fraudulent inducement claim because the Release "does not purport to waive defenses to its own validity" and it does not contain a "specific disclaimer of Psenicska's claim of fraudulent inducement." Opp. at 16-17. In making this argument, however, it appears Plaintiff has *still* failed to read the Release. Paragraph ¶ 4(n) of the Release, which Plaintiff ignores, states that Plaintiff "waives, and agrees not to bring at any time in the future, any claims [against Defendants], that include assertions of . . . *fraud* (such as any alleged deception or surprise about the Film or *this consent agreement*)." Release ¶ 4(n) (emphasis added); *see also* Release ¶ 3 (Plaintiff "understands . . .

4

that the consent agreement . . . shall be irrevocable"). As such, contrary to Plaintiff's allegations, the Release explicitly waives both fraud claims *and* attacks on its validity. Accordingly, Plaintiff's fraudulent inducement claim fails and he is bound by the Release.

### B.  The Release Accurately Describes The Film

Next, in his Opposition, Plaintiff advances a completely new theory that, regardless of whether Defendants made any oral misrepresentations, the Release is still invalid because it mischaracterizes the nature of the Film. Opp. at 1. This argument is somewhat surprising. Plaintiff concededly signed the Release *without* reading it. Opp. at 14. Therefore, it is odd that he now chooses to argue that if he had read it, he *would have been* misled as to the nature of the Film.

Further, Plaintiff's argument on this point hinges on a misreading of the Release. Plaintiff argues that Paragraph 4 of the Release, which waives all of Plaintiff's claims against Defendants, is limited by the definition of the Film as a "documentary-style" film. Opp. at 7. But this is clearly false. A simple reading of this paragraph shows that Plaintiff acknowledges that in entering into the Release he was not relying on anyone's representations with respect to the nature of the Film, and "specifically, but without limitation, waives and agrees not to bring at any time in the future *any claims*" against Defendants including claims for "infringement of rights of publicity or misappropriation (such as any alleged improper of unauthorized use of [Plaintiff's] name or likeness or image)", breach of contract or deceptive trade practices, prima facie tort or fraud – the exact claims asserted against Defendants in the Complaint. *See* Release ¶¶ 4(a), (h), (i) (m), (n). (Emphasis added.) This paragraph is *not* limited to claims based on Plaintiff's appearance in a documentary-style film.

Moreover, even if Plaintiff had correctly read the Release, his argument would still be unpersuasive because the Release accurately describes the Film. Plaintiff incorrectly contends

5

that, contrary to the description in the Release, the Film is not a documentary-style film because, he argues, a documentary connotes non-fiction and the Film is indisputably fiction. Opp. at 1, 8. Indeed, Plaintiff uses nearly five pages of text in an attempt to impress this Court with his knowledge of film history and the definition of a true documentary. But, this dissertation is wholly irrelevant – the Release *does not* state and Defendants do not argue that the Film is a "documentary." Instead, the Release accurately describes the Film as a "motion picture" that is in a "documentary-*style*" that will be aimed at a "young adult audience by *using entertaining content and formats*" and that may involve some "*offensive behavior* or questioning." Release at 1, ¶¶ 1, 4(d) (emphasis added).

In fact, some courts have already concluded that this Film is a documentary-style film. For example, in *Doe v. One America Prods., Inc.*, SC091723 (Sup. Ct. Los Angeles Co. Feb 15, 2007), the Superior Court of California described the Film as a "part documentary" which "utilizes the reactions and statements of people . . . to subversively satirize the true targets of the movie: ethnocentrism, sexism, racism, and the like." *Id.* (annexed as Exhibit B to the Opening Memorandum). In *Johnston v. One America Prods., Inc.*, No. 2:07CV042-P-B, 2007 WL 2903218 (N.D. Miss. Oct. 2, 2007), the United States District Court for the Northern District of Mississippi held that the Film "is not simply an ordinary, expressive, fictional work with fictional actors. Nor is it a pure documentary. Rather, the film is a unique mixture of documentary and fiction which blurs the boundaries of both genres . . . ." *Id.* at *5. Indeed, just last month, this Court noted that the Film "contains a series of clips of Borat greeting and otherwise interacting with [real] people in New York City, chronicling their various reactions," and observed that the Film "challenges its viewers to confront not only the bizarre and offensive Borat character himself, but the equally bizarre and offensive reactions he elicits from 'average'

6

Americans." *Lemerond v. Twentieth Century Fox Film Corp.*, No. 07 Civ. 4635 (LAP), 2008 WL 918579, at *1, *3 (S.D.N.Y. Mar. 31, 2008). Moreover, the Film was nominated for best *non-fiction* film of 2006 by the New York Film Critics Circle. *See* http://goldderby.latimes.com/ awards_goldderby/2006/12/hudson_voted_be.html (last visited Apr. 28, 2008) (runners-up for the Best Non-Fiction Award by the New York Film Critics Circle: *49 Up*, *Borat*, *An Inconvenient Truth*).

      Despite all of Plaintiff's efforts to escape the consequences of signing the Release, it is clear that the Release is enforceable and his Complaint must be dismissed. Indeed, as discussed more fully in the Opening Memorandum, Plaintiff's argument is just like that rejected by the court in *Weil*. *Weil*, 2002 WL 31972157. In *Weil*, the court enforced a release despite plaintiff's allegations that he was fraudulently induced into signing it. Plaintiff claims that *Weil* is "distinguishable [because] the film in which the plaintiff appeared was exactly what had been orally described to him by the producers." Opp. at 8-9. But, in so arguing, Plaintiff has clearly mischaracterized the holding in *Weil*. The plaintiff in *Weil* alleged, as Plaintiff does here, that he was fraudulently induced to sign a release because the defendant misled him about the nature of the film. *Weil*, 2002 WL 31972157, at *1. The court rejected plaintiff's claim of fraud noting that the release stated that the film would be a "documentary film project," and the plaintiff should have been "alerted to the fact that the enterprise was not a 'student project,' but rather was a commercial production being undertaken by a professional studio" because the release was "under the letterhead of Black River Films, Inc., with a Beverly Hills, California address and telephone number." *Id.* at *1, *2. Similarly here, if Plaintiff had read the Release, he would have been alerted to the fact that the Film was *not* a purely non-fiction film, but rather a

\\\NY - 027721/000007 - 1081797 v1

documentary-*style* motion picture geared to young audiences. As such, *Weil* is directly on point here.

Accordingly, Plaintiff is bound by the Release he concededly signed, which released any and all claims he might have had against Defendants.

## II.
## THIS COURT SHOULD DISMISS PLAINTIFF'S QUANTUM MERUIT CLAIM

In addition, this Court should dismiss Plaintiff's claim for quantum meruit because it is duplicative of his third cause of action for commercial misappropriation pursuant to New York Civil Rights Law § 51 ("Section 51"), which is the exclusive remedy under New York law for the alleged misappropriation of a plaintiff's image.

Plaintiff explicitly plead that his quantum meruit claim was based on Defendants' "misappropriating Plaintiff's likeness without his consent . . . ." Complaint ¶ 47. Now, apparently realizing that such a claim is preempted by Section 51, Plaintiff attempts to recast this claim to argue that it should not be preempted by Section 51 because "Defendants did not simply use Psenicka's image. They availed themselves of his services as an on-screen talent, and they must pay for them." Opp. at 19. But Plaintiff's attempt to save this claim is both disingenuous and futile.

Under New York law,

> Where a claim arises from unauthorized use of an image or likeness, plaintiffs have not been allowed to advance common law claims . . . merely by recasting the statutory claim as a common law claim. New York courts have refused to recognize efforts to present statutory privacy claims as common law claims where the claim is based on alleged unauthorized use of a plaintiff's image or likeness and *have refused to exalt form over substance when a plaintiff attempts to do so*.

*Zoll v. Jordache Enters., Inc.,* No. 01 Civ. 1339 (CSH), 2002 WL 31873461, at *16 (S.D.N.Y. Dec. 24, 2002) (dismissing trespass and unjust enrichment claims because they are "*in substance*,

8

based on the unauthorized use of [plaintiff's] image for commercial purposes") (emphasis added); *See also Lemerond*, 2008 WL 918579, at *3 (dismissing quantum meruit claim because "common law claims … related to unauthorized use of a person's image or likeness are subsumed under §§ 50 and 51").[3]

Here, Plaintiff initially based his quantum meruit claim in his Complaint on Defendants' alleged misappropriation of his likeness. Complaint ¶ 47. But now switching gears in his Opposition, he basis his quantum meruit claim on Defendants' use of his "services as an on-screen talent." Opp. at 18. Under either formulation, this claim is, at the heart, based on the alleged misappropriation of his likeness in the Film. This shift in arguments must be rejected. Indeed, were Plaintiff correct, then his "services" exception would swallow the preemption rule. In other words, every person who was photographed or filmed for a motion picture could claim that he or she provided a service and assert *both* a quantum meruit and a Section 51 claim. Clearly, such a result would be inconsistent with the holdings in *Zoll* and *Lemerond*. As such,

---

[3]   To the extent Plaintiff attempts to argue that his quantum meruit claim is not based on his appearance in the Film, but rather on his "services" as a driving instructor, Opp. at 18-19, his claim must fail. First, Plaintiff waived his right to bring this type of claim. See Release ¶ 4(h) (waiver of claims based on alleged breach of contract), 4(i) (waiver of claims based on "alleged deceptive business or trade practices"). Second, Defendants paid Plaintiff five hundred dollars ($500.00) for his services as a driving instructor and his appearance in the Film. As such, while Plaintiff may want more money, there has been accord and satisfaction and he cannot maintain a quantum meruit claim. *See Freedman v. Pearlman,* 271 A.D.2d 301, 304, 706 N.Y.S.2d 405, 408 (1st Dep't 2000) (dismissing quantum meruit claim because plaintiff was paid for his employment services and his "allegation that he performed services far greater than defendants deserved for the compensation he actually received are not sufficient to state a cause of action in quantum meruit").

9

Plaintiff's quantum meruit claim is preempted by Section 51, waived by Paragraph 4(a) of the Release, and should be dismissed.[4]

## CONCLUSION

For all of the foregoing reasons, defendants Twentieth Century Fox Film Corporation, One America Productions, Inc., Todd Schulman and Sacha Baron Cohen respectfully request that this Court dismiss the Complaint in its entirety, with prejudice, and grant such other and further relief, together with costs, as this Court deems appropriate.

Dated: April 29, 2008

Respectfully submitted,

HOGAN & HARTSON LLP

By: s/ Slade R. Metcalf
Slade R. Metcalf (SM 8360)
Katherine M. Bolger (KM 6206)
Rachel F. Strom (RS 9666)
HOGAN & HARTSON LLP
875 Third Avenue
New York, New York 10022
Tel. (212) 918-3000
Fac. (212) 918-3100
*Attorneys for Defendants Twentieth Century Fox Film Corporation, One America Productions, Inc., Todd Schulman, and Sacha Baron Cohen*

---

[4] Plaintiff has not opposed Defendants' arguments in the Opening Memorandum that Plaintiff's Section 51 claim (Third Claim) and prima facie tort claim (Fifth Claim) should be dismissed. For the reasons set forth in the Opening Memorandum, therefore, this Court should dismiss those claims.

10

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
MICHAEL PSENICSKA,

                     Plaintiff,          Case No.: 07 CIV 10972 (LAP)

    -against-

TWENTIETH CENTURY FOX FILM CORPORATION,
ONE AMERICA PRODUCTIONS, INC.,
TODD LEWIS, and
SACHA BARON COHEN,

                     Defendants.
------------------------------------------------------------------------X

## CERTIFICATE OF SERVICE

      I, Rachel F. Strom, hereby certify that on April 29, 2008, I caused a true and correct copy of the Defendants' Reply Memorandum Of Law In Further Support Of Their Motion To Dismiss The Complaint to be served through the Court's electronic notification system and by Federal Express overnight delivery upon:

        Peter M. Levine, Esq.
        488 Madison Avenue
        19th Floor
        New York, NY 10022
        (212) 599-0009
        *Attorney for Plaintiff Michael Psenicska*

Dated: April 29, 2008

                                                            s/ Rachel F. Strom
                                                 RACHEL F. STROM (RS 9666)